UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYJUAN GRAY,

        Plaintiff,

v.

DEPUTY BOOSE and
GENESSEE COUNTY JAIL,

        Defendants.

_____/

Case No. 4:22-cv-10100
District Judge Shalina D. Kumar
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT DEPUTY BOOSE'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 45)

**I.     RECOMMENDATION:** The Court should **GRANT** Defendant Deputy Boose's motion for summary judgment. (ECF No. 45.)

**II.    REPORT:**

### A. Background

Plaintiff Tyjuan Gray, proceeding without the assistance of counsel, filed the instant action on January 10, 2022. (ECF No. 1.) The lawsuit stems from the alleged events of September 9, 2021 to September 18, 2021, when Plaintiff was located at Genesee County Jail (GCJ) and claims his lunch and dinner trays were poisoned. (ECF No. 1, PageID.5-7.) Specifically, he claims that his lunch and dinner trays were "being poisoned by Deputy Boose the entire time" while Gray

"was in the hole on 5A Cell #1." *(Id.,* PageID.15; *see also id.*, PageID.8.)  Plaintiff

contends that he "informed health care at the [GCJ] about [his] issues[,]" and "sent

mu[l]tiple kites to health care about the issues [he] [is] experiencing." (*Id.*,

PageID.9-11; *see also id.*, PageID.8.)  He complains that his chest hurt and he

experienced shortness of breath, headaches, and muscle cramps and stated in his

complaint, "I think everything I eat here is lace[d] with poison."  (ECF No 1,

PageID.8.)

Naming GCJ and Deputy Boose as defendants, Plaintiff filed this lawsuit

pursuant to 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment right

against cruel and unusual punishment.  (*Id*., PageID.1-4; *see also id*., PageID.8.)

On March 4, 2022, Judge Kumar entered an opinion and order of partial summary

dismissal which, among other things, dismissed GCJ because "it is not a legal

entity capable of being sued under section 1983[,]" leaving Defendant Boose as the

only remaining defendant. (ECF No. 6, PageID.23.)  Judge Kumar then referred

this case to me for pretrial matters. (ECF No. 8.)

### B. Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.,* 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry,* 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

**C.    Discussion**

**1. Eighth Amendment vs. Fourteenth Amendment**

Plaintiff brings his cause of action under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment's Cruel and Unusual Punishments Clause, which places restraints on prison officials, directing that they "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). Prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Id.*   The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (*quoting Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). The alleged deprivation must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).

Although Plaintiff asserts that Defendant violated his Eighth Amendment rights, and although Defendant does not dispute this standard, the correct standard for Plaintiff's allegations would appear to be the Fourteenth Amendment, not the Eighth Amendment, as Plaintiff's time in the Genesee County Jail (after a transfer from the Midland County Jail) apparently relates to pretrial detention. (ECF No.

45, PageID.342; ECF No. 45-2, PageID.372-372 ("I have a court date coming up soon."); ECF No. 45-3.)  *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, (1983) (in a case involving medical care for pretrial detainee, "the relevant constitutional provision is not the Eighth Amendment but is, instead, the Due Process Clause of the Fourteenth Amendment.").  Plaintiff contends that he was poisoned from September 9, 2021 to September 18, 2021 (ECF No. 1, PageID.5-7), when Plaintiff, as a pretrial detainee, was housed at GCJ awaiting trial on charges of being a felon in possession of a firearm (ECF No. 45, PageID.342.).

"Persons in the criminal justice system invoke different constitutional amendments in their 42 U.S.C. § 1983 suits depending on their status." *Hale v. Boyle Cnty.*, 18 F.4th 845, 852 (6th Cir. 2021).  Convicted persons bring § 1983 claims under the Eighth Amendment's protection from cruel and unusual punishment. *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 318 (1986).  This is so because prior to conviction, the purpose of any confinement is *detention* (either to protect the public by incapacitation or to reasonably assure future court appearances), not *punishment*.  Accordingly, pretrial detainees must bring claims under the Fourteenth Amendment's Due Process Clause. *Id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 391 (2015)).  While courts invoke a test with objective and subjective components when assessing convicted persons' Eighth Amendment

claims, *id.* (citing *Wilson v. Seiter*, 501 U.S. 294 , 298 (1991)), the Supreme
Court's decision in *Kingsley* eliminated the subjective element of a pretrial
detainee's Fourteenth Amendment claim. *Brawner v. Scott Cnty., Tennessee*, 14
F.4th 585, 591 (6th Cir. 2021) (citing *Villegas v. Metro. Gov't of Nashville*, 709
F.3d 563, 568 (6th Cir. 2013)). Thus, when a pretrial detainee brings a cause of
action based on infliction of injury during confinement, the claim is properly
analyzed under the objective standard of the Fourteenth Amendment, not the
objective and subjective standard of the Eighth Amendment. *Hale*, 18 F.4th at
852.

To succeed on a Fourteenth Amendment claim, Plaintiff must show "that the
force purposely or knowingly used against [a pretrial detainee] was objectively
unreasonable." *Kingsley*, 576 U.S. at 396-97. "The reasonableness of the force
turns on the facts and circumstances of the particular case, and '[a] court must
make this determination from the perspective of a reasonable [official] on the
scene, including what the [official] knew at the time, not with the 20/20 vision of
hindsight.'" *Howell v. NaphCare, Inc.*, 67 F.4th 302, 320 (6th Cir. 2023) (quoting
*Kinglsley,* 576 U.S. at 397).

## 2. Analysis

In most Fourteenth Amendment cases, the focus of the Court's inquiry revolves around whether the alleged infliction was objectively reasonable. Here, however, there can be no doubt that *if* a deputy is sprinkling poison on a detainee's food, such an act would be objectively unreasonable. Instead, the focus of this case is whether Plaintiff can point to sufficient evidence to create a triable jury issue on whether Defendant Boose actually put poison on his food.

On that point, Defendant Boose has brought a motion for summary judgment, arguing that the record evidence does not create a jury question and he is entitled to judgment as a matter of law. He contends that Plaintiff cannot point to any admissible evidence on which a reasonable jury could find that Defendant poisoned Plaintiff's food during the alleged time-frame (or ever). Further, Defendant cites to Plaintiff's deposition testimony and medical records to show that Plaintiff's own testimony reveals that he never saw Defendant poison his food, never had his food tested for poison, never was diagnosed with any kind of poisoning, never visited a doctor for any kind of symptoms of poisoning, and in fact there is documentation that he had complained of all of his alleged symptoms *before* arriving at GCJ.

First, Defendant points to Plaintiff's deposition testimony, in which Plaintiff stated that he was poisoned while being held in "Cell 1," and that he does not allege anyone other than Defendant Boose poisoned him.  (ECF No. 45-2, PageID.376, 395.)  He admitted that he had no "smoking gun evidence" that he was poisoned, but that he "tasted it" on his food.  (*Id.* at PageID.376-77.)  Plaintiff further admitted that all he saw was that Defendant Boose brought him his food tray, and that he never saw Defendant actually put anything on his food.  (*Id.* at PageID.378 ("I can't say I seen him putting nothing in the tray.").)  Plaintiff contends that he knew the food was poisoned because, "I know the difference between a regular tray and a tainted tray . . . [b]ecause I eat the trays every day." (*Id.* at PageId.379.)   Elaborating on the taste of the food, Plaintiff said, "Just -- You know what I'm saying? *It tasted weird*. It tasted like some, um, brew tab or something. Man, tasted weird as hell. You know what I'm saying? You could taste it. You know what I'm saying? It just was a weird taste. It'd be on your mouth. It was like I couldn't ever get it out -- out of my mouth." (*Id.* at PageID.387 (emphasis added).)  When asked if he got sick after eating the food, Plaintiff stated:  "I – I got lightheaded and, you know what I'm saying, and sh*t like that because – and it was a weird taste to the food.  You know what I'm saying?  Bad headaches.  You know what I'm saying?  Stomach pains." (*Id.* at PageID.379.) He contends that the poisoning caused high blood pressure, which he still

experiences to this day.  (*Id.* at PageID.400.)   When asked, what if a doctor were to say that the blood pressure could not be tied to poison, Plaintiff responded, "I mean, I'm still having the same symptoms from when it happened. But, I mean, if a doctor said that, and which he didn't, I mean, I would probably still be having, you know what I'm saying, chest pains, you know what I'm saying, headaches."  (*Id.* at PageID.400.)

Plaintiff testified that he did not retain any sampling of the allegedly poisoned food, and that the food was never tested or preserved.  (*Id.* at PageID.385.)  He states that if he was sick during that time, people would have assumed it was COVID because COVID at that time was prevalent.  (*Id.* at PageID.397.)  He does not believe his ailments were attributable to COVID though, because "I know if I did have COVID, you know what I'm saying, that the symptoms would have been just so direct of what they was."  (*Id.* at PageID.397.)  Plaintiff never left the jail to go to the hospital. (*Id.* at PageID.397.)  No doctor ever tested him or confirmed he was poisoned.  (*Id.*at PageID.401.)  He has no medical results indicating he was poisoned.  (*Id.*)

Plaintiff's deposition testimony is insufficient to create a triable issue that he was poisoned by *anyone*, let alone by Defendant Boose.  There is simply no competent evidence, other than Plaintiff's sheer speculation that he was poisoned. Because he did not see anyone poison his food, and because there is no evidence of

poison having been identified in his food, Plaintiff points to his alleged physical ailments.  Yet, there is no evidence that he was ever treated for, or diagnosed with, poison.  Indeed, Defendant has pointed to evidence that Plaintiff had complained of headaches, dizziness, high blood pressure, skin problems, chest pains, and migraines in July 2021 at Midland County Jail, before even arriving at Midland. (*See, e.g.,* ECF No. 45, PageID.345; ECF No.45-4, PageID.462, 468, 471.) Moreover, there is no indication in the medical records in the days immediately following the alleged poisoning that he complained of poison in his food or any symptoms related to the alleged poisoning.  Rather, on September 26, 2021, Plaintiff made a sick call request, complaining that he thought he had an ear infection, but no mention is made of stomach pains or any symptom of poisoning. (ECF No. 45-5, PageID.515.)  Finally, Defendant notes that Plaintiff's kiosk communications from GCJ do not evince any indication that he complained of poison in his food, or symptoms related to poisoned food.  Defendant asserts that, while there are 237 communications between Plaintiff and GCJ staff between August 5, 2021 and July 3, 2022, none of them refer to him being poisoned.  (ECF No. 45, PageID.347 (citing ECF No.45- 7.))

Furthermore, Defendant has also pointed to evidence that Defendant Boose was not even working for half of the days Plaintiff alleges he was poisoned. Plaintiff contends that he was poisoned from September 9, 2021 to September 18,

2021 (ECF No. 1, PageID.5-7; ECF No. 45-2, PageID.395.)  However,

Defendant's time card shows that he did not work on September 9, 13, 14, 17, or

18 (ECF No. 45-12, PageID.722), which constitute five of the ten days Plaintiff

alleges he was poisoned.

In response to Defendant's motion for summary judgment, Plaintiff submits

a two-page letter, failing to refute any of Defendant's evidence and failing to

provide any admissible evidence in support of his case.  Instead, Plaintiff argues

simply that camera footage − if provided − would supposedly prove his case.  (ECF

No. 49, PageID.746-47.)  This is not enough to meet Plaintiff's summary judgment

burden.[1]

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56.

Rather, "liberal treatment of pro se pleadings does not require lenient treatment of

---

[1] After briefing had closed on the motion for summary judgment, Plaintiff submitted a "supplement brief," in which he argues that it would be "unfair" to grant Defendant's motion without first providing the camera footage from the relevant dates at GCJ.  (ECF No. 51, PageID.754.)  Contained within the supplemental brief are the words "motion to compel," yet the brief appears to be submitted as a sur-reply.  If submitted as a sur-reply, the brief is improper and shall not be considered.  *See* E.D. Mich. LR 7.1(d)(1)(A) (allowing a motion, response, reply).  If submitted as a motion to compel, the motion is untimely.  Discovery in this case closed almost a year ago on August 22, 2023, and Plaintiff has shown neither "good cause" nor "excusable neglect" to extend the discovery deadline in this matter.  Fed. R. Civ. P. 16(b)(4), 6(b)(1)(B).  The supplemental brief also fails to meet the burden for relief under Fed. R. Civ. P. 56(d).  Moreover, it appears the issue is moot, as Defendant states "there is no video footage for the period of time set forth in Plaintiff's allegations."  (ECF No. 52, PageID.758.)

substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs.*, Inc., 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

Here, not only has Plaintiff failed to offer any evidence that he was poisoned, or that Defendant is the person who allegedly poisoned him, but the medical evidence in the record does also not support his claims.  *See Booher v. Montavon*, 555 F. App'x 479, 484 (6th Cir. 2014) (summary judgment proper where the medical evidence contradicts the plaintiff's allegations).  Nor has he offered any admissible evidence tying Defendant Boose to the alleged poisoning, or offered any evidence to refute Defendant's submission that Defendant was not working for half of the days on which Plaintiff claims he was poisoned.

Throughout his deposition, Plaintiff indicated that the only way he could prove the poisoning is that if he had a video from the jail showing Boose to have poisoned him.  (ECF No. 45-2, PageID.380, 401, 403.)  But according to

Defendant, Plaintiff has neither requested the video footage in written discovery requests, nor does any footage exist.  (ECF No. 52, PageID.758.)

Finally, to the extent he relies on other prisoners to support his claims, Plaintiff has not offered any admissible evidence, nor even any credible indication that admissible evidence exists, to support his claim.  Plaintiff testified at his deposition that fellow detainee Shrondey Arrington told Plaintiff that "he physically witnessed [Defendant] put something in the food."  (ECF No. 45-2, PageID.383.)   He stated that Arrington did not know what it was but, "I know it wasn't no pepper or salt that he – You know what I'm saying?  It wasn't like he was putting condiments on the food."  (*Id.*)  According to Plaintiff, Arrington said that it looked like Defendant put battery shavings or battery acid on the food.  (*Id.* PageId.384, 386.)  Plaintiff was told "it was black little specks that he put in the food, made it look like it was pepper . . . [b]ut it was really some type of form of some type of poison."  (*Id.* at PageID.386.)  Yet, no affidavit from Arrington has been presented by Plaintiff, and Plaintiff cannot rely on his own deposition regarding what Arrington told him to create a genuine issue of material fact, because it is inadmissible hearsay. *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (courts cannot consider hearsay when reviewing motion for summary judgment).

13

Indeed, Arrington brought a similar case against Deputy Boose, alleging that he put battery shavings that "looked like pepper" but "had no taste or smell" in his food in September of 2001, the same time period at issue in this case. *Arrington v. Boose*, No. 21-12433, 2023 WL 7095663, at \*5 (E.D. Mich. Aug. 23, 2023), report and recommendation adopted, No. 22-12433, 2023 WL 7093678 (E.D. Mich. Oct. 26, 2023). In that case, United States District Judge Terrance Berg adopted Magistrate Judge David Grand's Report and Recommendation to grant summary judgment to Boose. In Judge Grand's report, he noted:

> Arrington has come forward with no competent evidence that Deputy Boose put battery shavings in his food. Indeed, at his deposition, Arrington testified that he never saw Deputy Boose put the "poison," i.e., the battery shavings, into his food, which means Arrington has no foundation for his self-serving contrary testimony. (ECF No. 33-2No. 33-2, PageID.249-50, 262). Moreover, despite Arrington's claim that consuming the substance (which Arrington testified "looked like pepper" and had no taste or smell) (*id.*, PageID.248-49) made his stomach hurt and caused him to feel "woozy," he admitted he required no medical treatment as a result of this alleged "poisoning" (*Id.*, PageID.257-58). Thus, there simply is no evidence in the record supporting Arrington's claim that Deputy Boose put battery shavings in his food, or that whatever Arrington consumed caused him significant injury. *See Booher v. Montavon*, 555 F. App'x 479, 484 (6th Cir. 2014) (where the medical evidence plainly contradicted the plaintiff's allegations, there was no genuine issue of material fact for trial); *Davis v. Thomas*, No. 3:13-CV-1711, 2015 WL 4638131, at \*9 (M.D. Pa. Apr. 7, 2015) (Eighth Amendment claim fails where plaintiff was not required to seek medical treatment for any alleged medical concerns)

*Arrington*, 2023 WL 7095663, at *5.  Thus, not only has Plaintiff failed to present any affidavit from Arrington, but it does not appear any such affidavit could support his claim.[2]

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative.  *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Here, Defendant provided sufficient evidence demonstrating there is no genuine issue of fact that he poisoned Plaintiff's food.  In response to this evidence, Plaintiff was required to "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  Because Plaintiff has failed to meet his burden to point to sufficient evidence to create a jury question, the Court should **GRANT** summary judgment

---

[2]   Plaintiff submits in his response brief that Dominique Wright was also an inmate who was allegedly poisoned by Defendant but was too afraid to file a lawsuit.  (ECF 49, PageID.747.)  However, Plaintiff has not submitted any affidavit or other testimony of Wright to support his claims and any assertion by Plaintiff himself as to what Wright may or may not have seen or said is hearsay at best and speculation at worst.

in favor of Defendant Boose. *See Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

### D. Conclusion

For the reasons stated above, the Court should **GRANT** Defendant Deputy Boose's motion for summary judgment. (ECF No. 45.)

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 18, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE